On November 20, 1937, W.I. Wilkie, defendant herein, by warranty deed, sold and conveyed to plaintiff, Roy O. Martin, undivided interests in and to the oil, gas and other minerals in, under and that may be produced from several tracts of land in Bienville and Natchitoches Parishes. The deed was signed by defendant in Bienville Parish, but was not filed for record in the recorder's office of that parish until March, 1941, over three years subsequent to its execution. Its whereabouts for this period is not shown, nor is it shown at whose instance it was recorded. It was not filed nor recorded in Natchitoches Parish. Plaintiff was not present when the act was signed by defendant, but was thereafter provided with a copy of it.
In the year 1944 a man by the name of Bert Koonce proposed to defendant to purchase all of his mineral interests in Natchitoches Parish at the price of $5 per acre, which offer was accepted. Defendant authorized Koonce to check the records of that parish to ascertain definitely the mineral interests owned by him therein and this was done. Plaintiff's deed not being of record, the mineral interests in Natchitoches Parish described therein stood in defendant's name and, naturally, were included in the deed Koonce prepared for defendant's signature. He signed the act in ignorance of the fact that the mineral rights he had previously conveyed to plaintiff were incorporated therein. The act was promptly recorded. Soon after this, due to exploration for oil not a great distance away, the mineral rights sold by defendant to plaintiff attained a value many times greater than the price plaintiff paid for them. He had the records checked about the first of the year 1945 and then learned that his deed had not been recorded in Natchitoches Parish, and that because of this and the sale to Koonce his title to said mineral rights was worthless. This suit followed.
Plaintiff, after alleging acquisition of said mineral rights from defendant, nonregistry of his deed in Natchitoches Parish, subsequent sale of such rights by defendant to Koonce, and consequent loss of his title thereto, alleged that at the time the suit was filed said mineral rights were well worth $2,000 and because of the breach by defendant of his obligation as warrantor, by making the sale to Koonce, he, plaintiff, had been damaged to this extent. Judgment for said amount is prayed for.
Defendant averred and testified that when he executed the deed to Koonce he was unaware that the mineral rights in Natchitoches Parish sold by him to plaintiff were included therein, and that he did not intend to sell same to Koonce. He denies the charge of fraud and bad faith made against him on account of the sale to Koonce, and averred willingness to refund to plaintiff the price paid by him for said *Page 889 
mineral rights, alleged to have been $220. This amount was tendered in the answer but was refused by plaintiff.
At the beginning of trial it was stipulated by counsel that $220 was the true price of the sale of the minerals involved herein.
There was judgment for plaintiff for said amount. Defendant was cast for costs. Plaintiff appealed. Defendant has not answered the appeal.
In brief, plaintiff's counsel correctly submit that the sole question in the case is this:
Is the measure of plaintiff's right to recover, the amount he paid defendant for the mineral rights or the value of such rights when plaintiff was evicted therefrom? The loss suffered by plaintiff because of defendant's action, above related, he characterizes as damages sustained by him.
[1] It is clear that through inadvertence defendant breached his obligation as warrantor of the title he gave the plaintiff. Because of this action, plaintiff has suffered eviction from the property rights he paid for, but, as inequitable as it may appear, he has no legal right nor standing to hold defendant responsible to him for the enhanced value of the property right he has lost. The law applicable to the facts and the jurisprudence leave no doubt on the subject.
Concerning the measure of the rights of the evicted vendee against his warrantor, Article 2506 of the Civil Code prescribes the rule. It reads:
"When there is a promise of warranty, or when no stipulation was made on that subject, if the buyer be evicted, he has a right to claim against the seller:
"1. The restitution of the price.
"2. That of the fruits or revenues, when he is obliged to return them to the owner who evicts him.
"3. All the costs occasioned, either by the suit in warranty on the part of the buyer, or by that brought by the original plaintiff.
"4. The damages, when he has suffered any, besides the price that he has paid."
The language of this article is virtually identical with Article 2482 of the Civil Code of 1825. It will be noted therefrom that nothing is said concerning the right of the evicted vendee to recover the enhanced value of the thing sold. This omission, in view of the provisions of the Digest of the Civil Laws of 1808 (often referred to as Civil Code), is quite significant. It is expressly provided in this early Digest, Article 57, page 354, under the title: "Of the Warranty, in Case of Eviction of the Thing Sold", that: "If at the time of the eviction the thing sold has risen in value even without the buyer having contributed thereto, the seller is bound to pay him the amount of said augmentation of value above the price of the sale."
The first case to reach the Supreme Court after the adoption of the Code of 1825 that involved a construction of Article No. 2482 thereof was that of Morris v. Abat et al., 9 La. 552, which was reproduced in 13 La. 148, et seq. It was expressly held in that case that Article 57, page 354, of the Digest of 1808, quoted supra, had been suppressed and repealed by the adoption of the Code of 1825. In the course of the opinion Justice Martin, as the Court's organ, said: "To say that the word damages, means the loss of profits not made, or to be responsible for the augmentation of the value of the thing sold at the time of eviction, beyond the price of the original sale, would be to restore and carry into effect the entire provisions of the article in the Civil Code which the legislature intended to suppress and repeal. It would, in fact, reinstate the article of the former code, which was recommended by the jurisconsults to be suppressed, and which was formally suppressed and repealed on the adoption of the Louisiana Code."
The next case involving this principle, considered by the Supreme Court, is that of Bissell et ux. v. Erwin's Heirs,13 La. 143 et seq. The court in that case laboriously endeavored to show that what was held therein did not conflict with the opinion in the Morris v. Abat case; but, frankly, after a close study of both opinions, we are of the opinion that there is diametrical conflict between them. In this latter case the court specifically held that the trial judge erred in rejecting evidence to prove "the increase in value of the property at the time of the eviction." The court said that the ruling was the result of error, "into which many members of the bar have fallen, and it arises from some inaccuracies in the printing of the opinion of this court, in the case of Morris v. Abat et al., 9 La. 552."
In concluding its opinion the court finally said: "The law now stands here as it did *Page 890 
in France before the adoption of the code, and there the increased value of the property invariably formed part of the damages assessed on a warranty, but such increase only as the parties could have in contemplation at the time of the contract, ought to be taken into account, and the vendor should not be made to pay the increase which results from unforeseen events or from accidental or transient causes."
In the case of Burrows v. Peirce et al., 6 La. Ann. 297, the court again considered and discussed copiously the rights of the evicted vendee under Article 2482 of the Code of 1825. In the course of the opinion the cases of Morris v. Abat and Bissell et ux. v. Erwin's Heirs were analyzed. The court specifically declared: "The two decisions being directly in conflict, we are compelled to decide, in the present case, which is the true interpretation of article 2482 of the New Code."
It was finally held, as disclosed by the syllabus, that: "The damages which may be recovered by the vendee from the vendor of real estate does not extend to the increased value of the property which has been caused by the mere fluctuation of estimated value."
The rule laid down and announced in this case has since been uniformly followed. See Quillin v. Yair et al., 10 La. Ann. 259, wherein it was specifically held: "A purchaser of land, who has been evicted, is not entitled to recover from his warrantor, as damages, the increased value of the land at the time of eviction." See also Boyer v. Amet, Wife, etc., 41 La. Ann. 721, 6 So. 734.
In this last case the pertinent part of the syllabi reads: "In case of eviction the warrantor must restore the purchase price to his vendee without reference to the enhanced or depreciated value of the property at the date of the eviction."
The last decision of the Supreme Court dealing with the principle under discussion is that of Crowell Spencer Lumber Co. Ltd. et al. v. Hawkins, 189 La. 18, 26, 179 So. 21, 23. Therein it is said: "The only question remaining for decision is the amount of recovery to which plaintiffs are entitled by reason of their eviction from the 39.12 acres that belonged to the minor Haas. The amount of the recovery must be based on the value of the land at the time of its sale by Dr. Hawkins to the Crowell Company, and not at the time of the eviction. Burrows v. Peirce, 6 La. Ann. 297; Quillin v. Yair, 10 La. Ann. 259; Boyer v. Amet, 41 La. Ann. 721, 6 So. 734."
[2] It is argued on behalf of plaintiff that since he and defendant were associated in business in 1937, and on account of other considerations, it was defendant's duty to have seen to it that the deed was duly registered in both parishes, and the failure on his part to have this done, coupled with subsequent sale of the rights therein conveyed, amounts, in law, to tort, and stamps defendant's conduct as being in bad faith and fraudulent. Employing this argument as a premise, it is further argued that the rule, with regard to breach of warranty, well established by the Supreme Court in the many decisions interpreting Article 2482 of the 1825 Code, and Article 2506 of the Code of 1870, should not be applied. The charges made against defendant are not sustained by the record.
The partnership relation between these parties terminated in 1939. At that time and for two years prior, plaintiff had in his possession a copy of the deed in question. He, seemingly, gave no thought to the rights therein conveyed to him for some eight years and it was only when such rights became valuable did his interest therein quicken. Surely, he is not entirely free of laches. Regardless of all of this, the facts of the case clearly warrant application of the rule generally pertinent in cases involving breach of warranty.
For the reasons herein assigned, the judgment appealed from is affirmed with costs. *Page 891